E-FILED
Wednesday, 21 October, 2026 11:38:23 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**ROCK ISLAND DIVISION**

FILED
10/20/2026
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

**ELIJAH L. HERGERT,**
Plaintiff,

v.

**AUGUSTANA COLLEGE,**
Defendant.

**Case No. 4:26-cv-04237-SLD-RLH**

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY**

The motion's opening paragraph is not a statement of the case. It is an argument that omits the facts that defeat it. On June 15, 2026, the Circuit Court in 2026EV284 severed the damages claims from the possession action and directed that they be filed in a new case. Plaintiff filed that case. The motion's claim that Plaintiff "filed the pending lawsuit asserting many of the arguments the jury rejected" ignores the severance order. The damages claims were not tried. They were ordered out of the possession case. Filing them here is compliance with the court's direction and an exercise of my rights, not defiance of a verdict that never addressed them. The sentence "*Rather than concede that he had no right to stay in the house even though his lease expired*" is a false premise and breathtakingly fallacious. The Landlord Retaliation Act supplies a defense to possession when a landlord's action is retaliatory. *765 ILCS 721/5, 721/15*. That defense is germane to a possession action. *Clore v. Fredman, 59 Ill. 2d 20 (1974*). The lease did not expire in a vacuum that extinguished every defense. The complaint alleges successive

renewals beginning in 2023, which opposing council neglected to treat, acceptance of rent after the fixed term (converting the tenancy to month-to-month under 735 ILCS 5/9-207), and that the operative notice for the possession judgment was the March 27, 2026 notice—not the October 14, 2025 letter the motion treats as dispositive, something else also conveniently unaddressed. Demanding a jury trial on a statutory defense the Legislature enacted is not a refusal to concede a non-existent absence of rights. It is the exercise of a right the statute provides. The motion converts the existence of a defense into an admission that the defense is meritless. The jury's verdict does not establish the facts the motion treats as settled. The motion states that the lease "expired by its own terms," that Plaintiff "refused to vacate," and that the jury "ruled against Plaintiff." Those are arguments. The possession case tried a retaliation defense on a limited record. The damages claims were severed. The appeal is pending. Illinois does not give collateral-estoppel effect to a judgment while appellate review is pending. *Ballweg v. City of Springfield, 114 Ill. 2d 107, 113 (1986)*. Treating the verdict as a determination that Plaintiff had "no right to stay" and that every subsequent claim is barred asks this Court to accept the motion's narrative as fact and to apply preclusion to claims that were never tried. That is not the standard on a motion to dismiss. The paragraph's desperate function is to collapse the case into a single story: lease expired, tenant refused to leave, jury rejected the defense, so the federal claims fail. That story omits the severance order, the successive renewals, the post-term rent acceptance, the March 27 notice, the pending appeal, and the distinction between a possession judgment and the damages claims the court ordered into a new action. Those omissions are not neutral. They are the argument. Plaintiff Elijah L. Hergert, proceeding pro se, respectfully opposes Augustana College's motion to dismiss or stay. The motion treats disputed allegations as settled facts, treats the eviction trial as adjudicating eleven different claims, and repeatedly asks the Court to resolve

motive and factual disputes against Plaintiff at the pleading stage. It also seeks dismissal with prejudice even where its arguments, at most, identify detail that could be supplied by amendment.

Plaintiff does not contend that his pro se status excuses compliance with the pleading rules, or that the College was categorically barred from serving a corrected notice or seeking possession. He contends that the Court must assess each claim under its own elements, accept well-pleaded facts as true, and draw reasonable inferences in his favor. Plaintiff also requests leave to amend any count the Court finds insufficiently pleaded.

## I. GOVERNING STANDARD AND MATERIALS OUTSIDE THE PLEADINGS

A complaint need not prove its allegations or establish a prima facie case. It must give fair notice and plead enough factual matter to make relief plausible. *Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009)*. In applying that standard, the Court accepts well-pleaded factual allegations as true, but need not accept bare legal conclusions.

The Court may consider a document referred to in the complaint and central to a claim, and may take notice that another court proceeding occurred. But judicial notice of a proceeding does not establish the truth of disputed testimony or allegations made in that proceeding. *Williamson v. Curran, 714 F.3d 432, 436 (7th Cir. 2013); Ennenga v. Starns, 677 F.3d 766, 774 (7th Cir. 2012); General Elec. Cap. Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1081 (7th Cir. 1997).*

Plaintiff does not object to the Court noticing that the eviction case was tried, that a verdict was returned, or that an appeal is pending. Plaintiff has made this clear multiple times. Rather, he objects to using selected transcript excerpts as proof of disputed facts, treating the jury's result as a determination of claims never tried, evidence never weighed or resolving contested inferences about motive on a motion to dismiss. If the Court considers material outside the pleadings for its truth, the motion must be treated as one for summary judgment and the parties must receive a reasonable opportunity to present pertinent material. *Fed. R. Civ. P. 12(d)*.

The motion's description of the complaint as "AI-generated," excessively long, or designed to "muddy the water" is not a ground for dismissal and should not have any weight, whatsoever, in the decision factfinder element of this matter. If it pleases the court and the opposing council, I have spent hundreds of hours verifying every and each citation against the record, facts and caselaw. The question is whether the allegations give notice and plausibly state claims, not who or what helped prepare the pleading or how many pages of exhibits it contains. The College's own count-by-count response confirms that it has identified and answered the theories it understands Plaintiff to assert. Pro se pleadings are construed liberally, while still applying the governing substantive law. *Erickson v. Pardus, 551 U.S. 89, 94 (2007)*.

Defendant's gross opening characterization of the Amended Complaint as a "168-paragraph, 11-count, AI-generated" pleading that "endeavored to muddy the water as much as possible," and that has "attached to it over 200 pages of exhibits (many of which would never be admissible in court)," is not legal argument, it's loaded acrobatic rhetoric. It is a bankrupt attempt to discredit the pleading by attacking the method of its preparation and the fact that a pro se former janitor used available tools to organize a profoundly complex record against a multi-million-dollar law firm that has been practicing civil litigation law for over a century. Speaking

further on grand dipartites, Augustana College controlled the housing, the employment, and the institutional proceedings that are the subject of these claims, utterly and entirely. It was simultaneously landlord, employer, and the authority overseeing the Title IX-related process. That triple role created an asymmetrical power dynamic that is not ordinary in a landlord-tenant or employment disputes. The use of assistance in drafting does not change the facts, but barely offsets the already profound resource disparity between an individual who was a janitor with an unlivable salary and a multi-million-dollar law firm that can assign multiple heavy-hitter lawyers on the whim. Frankly, the fight is and always has been astronomically unfair. The Court is not asked to decide whether assistance was used. Rule 8 asks whether the pleading gives fair notice and states a plausible claim. Again, Defendant's own memorandum demonstrates that it understood each of the eleven counts well enough to respond to them count by count. That response is the opposite of a pleading that failed to give notice. The volume of the complaint and the exhibits reflect the number of distinct statutory and common-law theories pleaded and the documentary record supporting them. It is not an effort to obscure. Defendant's frenzied effort to collapse every claim into two buckets—ordinary lease expiration and voluntary resignation—itself deceptively obscures the separate elements of the Landlord Retaliation Act, Title IX, the Fair Housing Act, the Rehabilitation Act, the FMLA, the Illinois Whistleblower Act, and the common-law claims and it's the same stunt characterizing the entire legal theory in the possession case. The multiple prior renewals of the lease, followed by a non-renewal approximately ten days after the police report of the aggravated felony battery, and the institutional pressures that radically and suddenly exponentialized (everything the motion to dismiss conveniently failed to mention) are not "muddying the water." The Plaintiff was a perfect tenant and employer, no write-ups, no late rent, multiple quality satisfaction reports. No

problems. Not one. Ever. They are facts that undercut the characterization that the housing claims are simply the residual of a fixed term that expired on its own. Those facts must be accepted as true at this stage.

Admissibility of particular exhibits is an evidentiary question for trial or a motion in limine, not a ground for dismissal. A mega firm's preference for a shorter, narrower narrative does not make the pleaded facts improper or scant. The cheap and vastly irrelevant attack on the use of assistance is an argument about optics and cosmic-level resource disparity. It is not a ground for dismissal. Furthermore, the disparity is not incidental. Defendant controlled the housing, the employment, and the institutional process that are the subject of these claims. The motion asks the Court to resolve factual disputes about motive, pretext, and the sequence of events in favor of the party that held those positions of control, and to do so at the pleading stage on a selective record. That request should be rejected. The well-pleaded facts, including the multiple prior renewals, the non-renewal approximately ten days after the police report and the sudden and abrasive institutional pressures and violations, must be accepted as true.

If it may be stressed, the memorandum's circular effort to treat the housing claims as the residual of a fixed term that expired on its own terms is the same position Defendant obsessively advanced in the possession case. The College's evidence in that case scantly consisted of the lease documents showing the term and the testimony of its facilities director that the property was needed for student housing. That testimony was not supported by contemporaneous written records. The College did not produce a written demand analysis, a housing-needs study, or any other document contemporaneous with the non-renewal decision that established a student-housing need for 1110 35th Street and it was their only existing justification for evicting the plaintiff, with a new-born infant, on the onset of winter and after a violent brutal assault. The

jury was instructed on the statutory presumption and on the College's burden once the presumption arose. The College's satisfaction of that burden is a contested issue that was tried in a possession action from which the damages claims were severed. It is not a fact established for purposes of this motion.

The successive yearly renewals of the lease, the vacancy of the premises for years before Plaintiff took occupancy, and the non-renewal approximately ten days after the police report of the aggravated battery are facts that undercut the characterization that the housing claims are simply the residual of a fixed term that expired on its own. Those facts are part of the pleaded course of conduct. They are not resolved by the possession judgment, which did not try the damages claims, and they are not resolved by a selective excerpt of state-court testimony offered on a motion to dismiss. The memorandum's looping reliance on the "lease expired on its own terms" framing asks the Court to accept, at the pleading stage and on a partial record, a theory that does not account for the renewals, the vacancy, the timing after the protected activity or the sudden institutional pressures. The Court is not required to accept that framing. The well-pleaded facts, including the renewals, the vacancy, and the short interval after the protected activity, must be accepted as true. Whether the College met its burden in the possession case is a question that the severance order left open for this action. It is not a basis for dismissing the claims on this motion.

The further assertion that the Amended Complaint "has attached to it over 200 pages of exhibits (many of which would never be admissible in court)" is not a ground for dismissal and is not a determination this Court is asked to make on a motion to dismiss, it's loaded acrobatic rhetoric. Admissibility is an evidentiary question governed by the Federal Rules of Evidence and is decided at trial or on a properly supported motion in limine, not by a party's characterization

of the volume of the record at the pleading stage. Whether any particular document is ultimately admitted, excluded, or limited is a question for later proceedings. Defendant's assertion that "many" of them "would never be admissible" is an opinion offered to diminish the record. It does not establish that the complaint fails to state a claim. The volume of the exhibits reflects the documentary history of the tenancy, the employment relationship, the police report, and the subsequent actions. It is not a defect. A large firm's preference that fewer documents be attached does not convert the existence of those documents into a basis for dismissal.

## II. COUNT I STATES A PLAUSIBLE CLAIM UNDER THE ILLINOIS LANDLORD RETALIATION ACT

The motion narrows Count I to one event, the October 14, 2025 nonrenewal letter, and one activity, Plaintiff's October 3 report to police of an assault at the premises. It then argues that the report cannot be protected because the College did not cause the assault. That reasoning conflates the conduct for which Plaintiff alleges retaliation with the underlying assault.

The Act provides that a landlord may not knowingly terminate a tenancy, increase rent, decrease services, bring or threaten to bring a lawsuit against a tenant for possession, or refuse to renew a lease or tenancy because the tenant has in good faith done any of the following, including "exercised any right or remedy provided by law." *765 ILCS 721/5*. An action is not retaliatory if the landlord can prove a legitimate, non-retaliatory basis for the action; or the landlord began the action before the tenant engaged in the protected activity. *765 ILCS 721/15*. The statutory presumption does not arise when protected activity began after the alleged retaliatory act. *765 ILCS 721/20*. That limitation on the presumption does not resolve the College's burden under section 15. At the June 1, 2026 trial, Robert Lanzarotti testified under

oath that the decision to reclaim the house was reached with "nothing in writing or anything like that." (June 1 Tr. 115.) The absence of any contemporaneous written record of the student-housing justification is evidence the College did not produce the legitimate, non-retaliatory basis it later advanced. Section 15 requires the landlord to prove that basis; the lack of a written record is relevant to whether that burden was met.

The College invokes ejusdem generis to limit subsection 5(7) to complaints about conditions of the premises. The neighboring provisions supply context, but subsection 5(7) states "any right or remedy provided by law." The first four paragraphs expressly cover complaints about "an illegal landlord practice," not merely code violations or repairs. 765 ILCS 721/5(2), (4), (7). Reporting a violent, bias-motivated assault occurring at the residence plausibly concerns tenant safety and the exercise of a legal right. The College's assertion that the Act protects only complaints directed at the landlord is not stated in subsection 5(7). Nor must the College have caused the assault for its response to the report to be retaliatory. Count I concerns the College's alleged reaction to Plaintiff's reporting and later conduct, not the College's liability for the assault itself. The short interval between the October 3, 2025 police report and the October 14, 2025 nonrenewal notice supports a plausible inference of causation at the pleading stage.

The memorandum treats the June 1, 2025 lease (June 1–November 30, 2025) as the sole, complete story and states that the lease "expired by its own terms" requiring immediate vacation. That framing is incomplete on the face of the complaint and the trial record. The Amended Complaint alleges successive leases beginning in 2023, multiple renewals, and acceptance of rent after the fixed term, which by operation of law converted the tenancy to month-to-month. 735 ILCS 5/9-207. The complaint further alleges that the operative notice for the possession judgment was the March 27, 2026 notice—not the October 14, 2025 letter. The jury verdict in

2026EV284 rested on the later notice. Treating the October 14 letter as the sole adverse action for Count I ignores both the pleaded chronology and the actual basis of the possession judgment.

At the June 1, 2026 trial, Robert Lanzarotti testified under oath that the household had occupied the house for "two years, two full years, two and a half years" under successive renewals (June 1 Tr. 116); that the decision to take the house back was reached with "nothing in writing or anything like that" (June 1 Tr. 115); that after learning of the assault he never reached out to Plaintiff about accommodations (June 1 Tr. 174:22–24); and that, asked whether the assault had any impact on the decision to take the property back, he answered "Zero, none" (June 1 Tr. 230). The student-housing justification offered in the possession case is further undercut by the history of the premises. The house at 1110 35th Street was vacant for years before Plaintiff moved in. That fact is inconsistent with a contemporaneous need for the property as student housing. Testimony that the property was required for student housing must be weighed against that vacancy, the successive renewals that followed, and the absence of any contemporaneous written record of the claimed need. Whether the inconsistency rises to a credibility determination is a question for later proceedings, not a basis for dismissing the retaliation claim at the pleading stage. The multiple renewals after years of vacancy, followed by a non-renewal approximately ten days after the police report, remain circumstantial evidence of pretext that the memorandum does not address.

The Act identifies multiple kinds of potentially retaliatory conduct, including refusing renewal, terminating a tenancy, and bringing or threatening a possession action. 765 ILCS 721/5. The College's identification of the October letter as the sole operative act is an argument about the facts and scope of the complaint, not a conclusion dictated by the statute. The complaint also describes later notices, a possession action, and other conduct. Section 15 does not make the

College's characterization dispositive. It says the landlord "can prove" a legitimate, nonretaliatory basis or that it began the action before the protected activity. That language identifies a defense to be established on evidence. Section 20 addresses when a rebuttable presumption arises. It does not say that evidence occurring after a decision is inadmissible or that later conduct can never illuminate motive, context, or a separately challenged act.

The College recognizes that the state-court appeal remains pending and that Illinois does not give collateral-estoppel effect to the verdict while appellate review is pending. *Ballweg v. City of Springfield, 114 Ill. 2d 107, 113 (1986)*. The damages claims were severed from the possession case on June 15, 2026. The federal action asserts claims beyond the possession defense tried in state court. The governing statute limits eviction proceedings to matters germane to possession. *735 ILCS 5/9-106*. At most, a final appellate judgment may present a preclusion question as to an issue or claim actually decided. The motion does not establish that all eleven counts are precluded.

## III. A STAY OF THE ENTIRE ACTION IS NOT WARRANTED

The College asks the Court to stay the entire federal case because the state appeal may affect Count I. The federal courts have a "virtually unflagging obligation" to exercise jurisdiction properly before them. *Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)*. A stay under Colorado River is an exceptional measure. The court must first determine that the proceedings are parallel and then find exceptional circumstances warranting surrender of federal jurisdiction.

The pending state appeal concerns the judgment in a possession case and the retaliation defense submitted there. It cannot provide a complete and prompt resolution of the federal claims

or the distinct damages claims pleaded here. On June 15, 2026, the Circuit Court in 2026EV284 severed the damages claims and directed that they be filed in a new action. Plaintiff filed that action. The possession judgment did not try those claims. The motion identifies claims under Title IX, the Fair Housing Act, Section 504, and the FMLA, among others. The appellate court is not trying those claims. A state appeal that may decide one overlapping issue is not an adequate vehicle for resolving the entire federal action.

The damages claims were severed precisely so they could proceed independently of the possession judgment. Staying the entire case would nullify that severance and leave the non-overlapping statutory and employment claims idle indefinitely. The College controlled the housing, the employment, and the institutional process. An indefinite stay would continue the resource disparity between an individual who was a janitor and a firm that can assign multiple lawyers to the case, while the alleged injuries remain unresolved. The fact that Plaintiff remains in the residence does not establish an absence of prejudice. The complaint alleges employment-related, statutory, and other injuries that are not resolved by present occupancy.

Plaintiff recognizes that the state case is further advanced and that a final appellate decision may affect the preclusive scope of the retaliation verdict. Those considerations could support a carefully limited stay of a genuinely overlapping claim if the Court finds it necessary. They do not justify staying every federal and state claim indefinitely. The Court should deny the request for a stay. Alternatively, if it concludes that the state appeal may resolve an issue material to Count I, it should stay only that overlapping issue or count, require periodic status reports, and allow the remaining claims to proceed.

## IV. COUNT II PLAUSIBLY ALLEGES INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS WHEN THE ALLEGED COURSE OF CONDUCT IS CONSIDERED AS A WHOLE

The College correctly identifies the elements of intentional infliction of emotional distress: (1) conduct that is truly extreme and outrageous; (2) an intent to cause severe emotional distress or knowledge that severe emotional distress was highly probable; and (3) actual severe emotional distress. *Pub. Fin. Corp. v. Davis, 66 Ill. 2d 85, 90 (1976); Richards v. U.S. Steel, 869 F.3d 557, 566 (7th Cir. 2017)*. The College is also correct that ordinary insults, annoyances, petty oppressions, or the permissible assertion of legal rights ordinarily do not satisfy the first element. But that does not permit the Court to isolate each alleged act from the course of conduct or to assume that each action was a lawful and permissible assertion of rights.

Illinois law requires the alleged conduct to be considered in its full factual context and as a whole. The Illinois Supreme Court has held that "[a] pattern, course, and accumulation of acts can make an individual's conduct 'sufficiently extreme to be actionable, whereas one instance of such behavior might not be." *Feltmeier v. Feltmeier, 207 Ill. 2d 263, 278 (2003)*. The question is not whether each alleged act, viewed in isolation and in the light most favorable to the College, was independently tortious. The question is whether the complaint plausibly alleges a continuing course of conduct that, considered as a whole, went beyond all possible bounds of decency and would be regarded as intolerable in a civilized community. Id.

The complaint meets that standard at the pleading stage. It alleges that the College exercised institutional control over Plaintiff's residence, maintained an ongoing employment relationship with him, and held absolute institutional authority over the proceeding related to the assault. It further alleges a related course of conduct involving housing, entries or lockouts, the

eviction process, a demand for payment for damage allegedly caused by the assailant, isolation directives, erroneous write-ups that broke from prior high or effective appraisals, and a later constructive discharge. Those allegations must be considered against the background of multiple prior yearly lease renewals, the vacancy of the premises for years before Plaintiff took occupancy, and the non-renewal approximately ten days after the police report of the aggravated battery. The College was simultaneously landlord, employer, and the authority overseeing the Title IX-related process. That triple role is not ordinary in a landlord-tenant or employment dispute. Whether the alleged course of conduct reflects a permissible exercise of authority or an abusive and coercive use of institutional power cannot be resolved by accepting the College's characterization of each episode on a motion to dismiss.

Illinois recognizes that the defendant's power or authority over the plaintiff is relevant to the outrageousness inquiry. "The more control which a defendant has over the plaintiff, the more likely that defendant's conduct will be deemed outrageous, particularly when the alleged conduct involves either a veiled or explicit threat to exercise such authority or power to plaintiff's detriment." *McGrath v. Fahey, 126 Ill. 2d 78, 86–87 (1988)*. Plaintiff does not contend that the College's ownership of the residence, its administration of a lease, or its participation in an institutional proceeding is independently outrageous. Rather, the complaint alleges that the College used those sources of authority in combination, including through alleged entries, lockout-related conduct, eviction pressure timed to the protected activity, financial demands, isolation directives, and conduct connected to the assault-related proceeding. The successive renewals followed by a non-renewal approximately ten days after the police report, against a history of vacancy, further undercut the characterization that the housing actions were ordinary lease administration.

The College's reliance on *Public Finance* does not compel dismissal. That decision recognizes that a defendant may assert legal rights without liability where those rights are exercised permissibly. It does not hold that every act associated with a lease, eviction, or institutional proceeding is immune from scrutiny, regardless of whether the complaint alleges unauthorized entry, lockout-related conduct, retaliation, coercion, lack of legal justification, or an improper purpose. To the contrary, *Public Finance* recognizes that the outrageousness inquiry may turn on the defendant's abuse of a position of power, the nature and duration of the conduct, the defendant's constant knowledge of the plaintiff's susceptibility, and the circumstances surrounding the defendant's asserted objective. The question is not whether the College possessed some contractual or institutional authority in the abstract. The question is whether, accepting the complaint's allegations as true, the College used that authority through the alleged course of conduct in a manner that exceeded any permissible assertion of its rights.

This is not an ordinary workplace-disagreement claim. The alleged conduct did not consist merely of criticism, discipline, or an adverse employment decision. It allegedly combined control over Plaintiff's housing with conduct arising from an assault-related proceeding, isolation directives, a demand for damage attributed to the assailant, and a later constructive discharge. The employment relationship is relevant not because every employment dispute is actionable, but because it allegedly formed part of the institutional power the College used in combination with its control over the residence. *Richards v. U.S. Steel, 869 F.3d 557, 566–68 (7th Cir. 2017)*. Nor does the allegation that Plaintiff had a newborn defeat the claim. Plaintiff does not contend that the presence of a newborn, standing alone, transforms an ordinary housing dispute into an IIED claim. The allegation instead supplies context for the College's alleged conduct and supports the inference that the College knew the threatened loss or disruption of housing would

have unusually serious consequences for Plaintiff and his family. A contractual provision concerning damage, access, or possession may ultimately bear on whether a particular act was authorized. It does not resolve, at the pleading stage, whether the College's alleged course of conduct was retaliatory, coercive, unauthorized, or outrageous when considered as a whole.

The College's reliance on *Bronstein* is misplaced to the extent it asks the Court to resolve factual disputes. Plaintiff does not dispute that a court may dismiss an IIED claim where the pleaded conduct plainly falls short as a matter of law. But the Court must accept the well-pleaded allegations as true and draw reasonable inferences in Plaintiff's favor. The Court should not decide at this stage whether the College had a permissible purpose, whether its entries or lockout-related conduct complied with applicable requirements, whether its financial demand was justified, or whether its actions in the assault-related proceeding were retaliatory or coercive. Those are factual questions that cannot be resolved by adopting the College's version of disputed events.

The complaint also plausibly alleges intent and severe distress. The alleged course of conduct, its repetition, the College's triple control over housing, employment, and the institutional process, and the College's alleged knowledge of Plaintiff's family and housing circumstances support a reasonable inference that the College knew its actions were highly likely to cause severe emotional distress. Illinois law permits the requisite knowledge to be inferred from the defendant's conduct and the defendant's awareness of the plaintiff's particular susceptibility. *McGrath, 126 Ill. 2d at 86–87*. Plaintiff further alleges that the cumulative conduct caused severe emotional distress that substantially affected his housing security, his employment, and his daily functioning. At the pleading stage, those allegations must be accepted as true and need not be proved through medical records or expert testimony. If the Court

concludes that the severe-distress allegations require greater specificity, Plaintiff requests leave to amend.

Finally, the College's statute-of-limitations argument does not support dismissal of the entire count. Illinois applies a two-year limitations period to IIED claims. But Illinois recognizes that IIED may constitute a continuing tort where the claim depends on a continuing or repeated course of conduct. In that circumstance, the limitations period begins when the last injurious act occurs or when the tortious conduct ceases. *Feltmeier, 207 Ill. 2d at 279–80*. Thus, even assuming the August 2024 warning is independently untimely, that would not necessarily dispose of a claim based on related conduct within the limitations period. At minimum, the Court should evaluate whether the timely allegations form part of the same continuing course and whether the earlier conduct is relevant to the cumulative outrageousness and causation allegations. Dismissal with prejudice is unwarranted, particularly before discovery has developed the circumstances of the alleged entries, lockout-related conduct, eviction process, financial demand, isolation directives, and assault-related proceeding.

## V. COUNT III REQUIRES ANALYSIS OF THE ALLEGED USE OF PROCESS, NOT RELIANCE ON THE EVICTION VERDICT

The College correctly states that Illinois abuse of process requires an ulterior purpose and an act in the use of process that is improper in the regular prosecution of the proceeding. *Pace v. Timmermann's Ranch & Saddle Shop, Inc., 795 F.3d 748, 757 (7th Cir. 2015); Kumar v. Bornstein, 820 N.E.2d 1167, 1173–74 (Ill. App. Ct. 2004)*. Plaintiff does not contend that an improper motive, standing alone, makes a lawful eviction filing abuse of process. The relevant

question is whether the complaint alleges both an ulterior purpose and a specific misuse of process to obtain a result beyond the process's intended purpose.

A judgment granting possession does not answer that separate question. The trial court in the possession case severed the abuse-of-process claim, stating that if Plaintiff wanted to develop it further and litigate it separately, he could do so. The current motion principally recounts the lease expiration, Plaintiff's continued occupancy, and the College's statutory right to seek possession. Those facts may support the College's defense, but they do not resolve allegations of an ulterior purpose or any specifically pleaded improper use. Plaintiff recognizes that this count is vulnerable if it alleges only that the College filed and refiled an eviction action without identifying an improper use of process after issuance. Plaintiff requests leave to amend to specify the particular process, the act alleged to misuse it, the collateral result sought, and the facts supporting the alleged ulterior purpose, if supported by the record.

## VI. COUNT IV IS NOT RESOLVED MERELY BECAUSE PLAINTIFF CONTINUED TO OCCUPY THE RESIDENCE

### A. The Eviction Requirement Must Be Applied to the Particular Theory and Conduct Alleged

The College's argument identifies a potential limitation on a constructive-eviction theory, but it does not establish that Plaintiff's continued residence defeats every allegation in Count IV. The relevant questions are what interference the complaint alleges, whether that interference included an actual deprivation of possession or access, and which contractual or common-law obligation the alleged conduct violated. Plaintiff acknowledges the adverse authority. In Advertising Checking Bureau, Inc. v. Canal-Randolph Associates, 101 Ill. App. 3d 140, 146 (1st

Dist. 1981), the court applied an actual-or-constructive-eviction requirement to a claim for breach of a lease's covenant of quiet enjoyment. Plaintiff therefore does not contend that every objectionable entry or inconvenience automatically constitutes a breach of that covenant.

Illinois authority, however, does not support treating that formulation as the end of the inquiry in every leasehold dispute. In Blue Cross Ass'n v. 666 North Lake Shore Drive Associates, 100 Ill. App. 3d 647 (1st Dist. 1981), the court addressed a landlord's contention that no breach could exist because the tenants had not been actually or constructively evicted and responded:

> *"We do not read the covenant of quiet enjoyment so narrowly."*

The court distinguished a covenant in a conveyance from the landlord interference before it and held that the tenants could seek injunctive relief where the landlord's conduct substantially interfered with their use and enjoyment of the premises. The decision involved an express lease covenant and prospective injunctive relief, circumstances that must be considered in assessing its application here. Nevertheless, it demonstrates why the Court should examine the governing lease language, the alleged interference, and the requested relief rather than assume that continued residence categorically defeats the claim. Blue Cross Ass'n v. 666 North Lake Shore Drive Associates, 100 Ill. App. 3d 647 (1st Dist. 1981).

### B. Continued Residence and Uninterrupted Possession Are Different Factual Propositions

Plaintiff does not dispute that constructive eviction ordinarily requires abandonment of the premises within a reasonable time following the interference relied upon. See Dennick v. Ekdahl, 102 Ill. App. 200 (1902). If Count IV rests solely on constructive eviction while alleging

that Plaintiff continuously retained possession, that theory requires separate scrutiny. But the College's assertion that Plaintiff continued to reside at the property does not answer whether Plaintiff was actually excluded during a particular incident. Continued residence describes the overall tenancy; it does not necessarily establish uninterrupted access throughout that tenancy.

The Court should therefore distinguish:

- Constructive eviction, in which conditions or interference allegedly caused the tenant to abandon possession.
- Actual exclusion, in which the landlord allegedly prevented the tenant from exercising possession or access.
- Unauthorized entry or other interference, which must be evaluated under the particular lease obligation or other legally sufficient theory asserted.

These distinctions do not establish liability by themselves. An unauthorized entry is not necessarily an eviction, and a threatened lockout is not necessarily an accomplished deprivation of possession. Conversely, an adequately alleged actual exclusion should not be rejected merely because Plaintiff later regained access or continued residing at the property. The allegations must therefore be evaluated for what they describe. To the extent Count IV alleges an accomplished denial of access or possession, the College must address those allegations rather than substitute the broader proposition that Plaintiff never permanently moved out.

### C. The Entry Allegations Must Rest on an Identified Legal Obligation, Not an Unsupported Notice Rule

Plaintiff does not rely on a generalized statutory requirement that every residential entry be preceded by twenty-four hours' notice. Any unsupported statutory citation should be removed rather than used to obscure the distinct allegations concerning possession and access.

Nor does Plaintiff contend that every landlord entry is unlawful. Any entry-based theory must identify the applicable lease provision or other legal obligation and explain how the alleged conduct exceeded the authority conferred by it. Permission to inspect, repair, alter, or show the premises must be evaluated according to the actual language and conditions of the asserted authorization.

The Court should accordingly distinguish an unsupported notice theory from an allegation that the College exceeded an identified contractual right of entry or actually deprived Plaintiff of access. Plaintiff does not ask the Court to recognize an unspecified tort merely because the complaint uses the words "wrongful interference."

### D. Any Pleading Deficiency Should Be Addressed Specifically, With an Opportunity to Clarify the Viable Theory

If the Court concludes that Count IV conflates constructive eviction, actual exclusion, and other interference, Plaintiff requests leave to amend to:

- Identify the precise contractual or common-law basis for each theory.
- Specify whether each incident involved entry, a threat of exclusion, or an accomplished denial of access.
- Identify the premises or portion affected, the duration of any exclusion, and the conduct attributable to the College.
- Connect the alleged conduct to the particular injury and relief sought.
- Remove unsupported statutory references and any theory that the alleged facts cannot support.

The Court should not treat continued residence as a substitute for that analysis. Plaintiff requests rejection of the College's categorical argument and, alternatively, an opportunity to clarify any potentially viable claim rather than dismissal with prejudice based solely on

Plaintiff's continued occupancy.

**VII. COUNT V PLAUSIBLY ALLEGES TITLE IX RETALIATION**

The memorandum's treatment of Count V is incorrect. It assumes that the only possible Title IX theory is a *Davis v. Monroe County Board of Education* deliberate-indifference claim for peer harassment, and that Title IX imposes no obligations because Plaintiff was not a student and because Augustana did not control the assailant. That is not the claim that is pleaded, and it is not the law.

Title IX protects any person who participates in an education program or activity from discrimination on the basis of sex, including retaliation for reporting sex-based harassment or for participating in a Title IX process. Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173–74 (2005). The protection is not limited to students. Employees, and others who have a relationship with the institution, may assert Title IX retaliation claims. The complaint alleges that Plaintiff reported an aggravated battery that involved sex-based or bias-related language, that he participated in the institutional process that followed, and that Augustana thereafter restricted his chosen advisor, took adverse housing and employment actions, and otherwise retaliated for that protected activity. Those allegations state a Title IX retaliation claim. They do not require Plaintiff to prove that Augustana controlled the assailant or that Augustana was deliberately indifferent to the assault itself.

The memorandum's reliance on *Davis* is therefore misplaced. *Davis* addresses a school's liability for student-on-student harassment when the school has substantial control over the harasser and the context and is deliberately indifferent. It does not exhaust Title IX. A retaliation claim under *Jackson* is distinct. The absence of control over the assailant and the fact that the

assault occurred at an off-campus residence do not defeat a claim that Augustana retaliated against Plaintiff for reporting the incident and for participating in the process that followed. The memorandum's assertion that "Beyond informing Plaintiff of support resources available to him, Title IX simply does not [require] Augustana to provide any services to Plaintiff under these circumstances" is also incorrect. Title IX does not limit the institution's obligations to a one-time offer of resources when the complainant is not a student. It prohibits retaliation for protected activity. Whether Augustana's subsequent actions—restrictions on the advisor, the non-renewal approximately ten days after the police report, isolation directives, and the later constructive discharge—were retaliatory is a factual question that cannot be resolved by assuming that the only possible Title IX duty was to hand Plaintiff a list of resources.

The preemption argument is equally incorrect. The memorandum cites *Waid v. Merrill Area Public Schools, 91 F.3d 857 (7th Cir. 1996)*, for the proposition that employment-related Title IX claims are preempted by Title VII. *Waid* was abrogated on that point by *Fitzgerald v. Barnstable School Committee, 555 U.S. 246 (2009)*. *Fitzgerald* held that Title IX and Title VII are independent and that Title IX is not preempted by Title VII for employment-discrimination claims at educational institutions. The memorandum's citation to *Waid* without acknowledging the abrogation is error. Even if some employment-related theories overlap with Title VII, the Title IX retaliation claim based on the report of the assault and the subsequent institutional process is not preempted.

The memorandum also asserts that nothing Augustana did in connection with the eviction or the changing of the locks was unlawful, and that any restrictions on the advisor were allowed by the Code of Federal Regulations. Those assertions ask the Court to accept the College's low-rent characterization of disputed facts. Whether the entries or lock changes were authorized,

whether the restrictions on the advisor exceeded what the regulations permit, and whether the actions were motivated by retaliation for the protected activity are questions that cannot be resolved on a motion to dismiss. The well-pleaded facts—the report of the aggravated felony battery, the participation in the process, the restrictions on the advisor, the non-renewal approximately ten days later, and the subsequent adverse actions—must be accepted as true. They state a plausible Title IX retaliation claim under *Jackson*. Dismissal is not warranted.

The College cites *Waid v. Merrill Area Public Schools, 91 F.3d 857, 861–63 (7th Cir. 1996),* and *Ludlow v. Northwestern University, 125 F. Supp. 3d 783, 790 (N.D. Ill. 2015)*. Those authorities present a substantial obstacle to using Title IX to repackage an employment-discrimination claim that belongs under Title VII. But the College must identify which allegations actually assert employment discrimination and which concern Plaintiff's alleged participation in a covered institutional proceeding in a different capacity. Employment by the College does not, without further analysis, turn every interaction with the College into an employment-discrimination claim. The Court should apply *Waid* to any claim within its scope, distinguish the retaliation theory recognized in Jackson where legally appropriate, and permit amendment to clarify the capacity, program, protected activity, and challenged conduct.

Plaintiff does not contend that an advisor has an unlimited right to direct institutional proceedings. The College correctly identifies regulatory language permitting restrictions applied equally to both parties. If the complaint challenges only a restriction expressly permitted by the applicable regulation, with no unequal application or retaliatory connection, that allegation alone is insufficient. The proper inquiry is what restriction was imposed, which rules governed the particular proceeding, whether the restriction complied with those rules, and whether facts plausibly connect it to protected activity. Plaintiff does not assert a standalone private damages

claim under the Clery Act.

## VIII. COUNT VI REQUIRES A FAIR HOUSING ACT NEXUS, BUT THE MOTION READS PROTECTED ENJOYMENT TOO NARROWLY

The College correctly identifies that *42 U.S.C. § 3617* protects rights granted or protected by the specified Fair Housing Act provisions. It does not create a general federal remedy for every landlord dispute or every adverse response to a police report. *Bloch v. Frischholz, 587 F.3d 771, 782–83 (7th Cir. 2009) (en banc); East-Miller v. Lake County Highway Department, 421 F.3d 558, 563 (7th Cir. 2005)*. But the statute is not confined to retaliation for filing a formal housing-discrimination complaint. It prohibits interference with a person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, specified protected rights. *42 U.S.C. § 3617.* The distinction matters. A claim of discriminatory interference with protected enjoyment of housing is not defeated solely because the plaintiff's police report was not a formal complaint about the landlord. *Bloch* recognizes that actionable interference can occur after the initial acquisition of housing.

Nevertheless, Plaintiff must plead facts connecting the College's conduct to an FHA-protected right and the required discriminatory or retaliatory intent. His sexual orientation, the assailant's alleged homophobic bias, and an adverse housing decision do not automatically establish that the College shared the assailant's bias or acted because of protected housing activity. Likewise, the College's argument that the parties previously agreed on a lease-expiration date does not categorically defeat discriminatory interference or retaliation. An agreed expiration date establishes a contractual term, not the motive behind every later decision concerning renewal, access, termination, or possession. If the complaint does not adequately

identify the protected housing right, the relevant College decisionmakers' knowledge, and facts supporting the necessary connection, Plaintiff requests leave to amend.

## IX. COUNT VII REQUIRES CLARIFICATION OF DISABILITY, COVERAGE, REQUESTED ACCOMMODATION, AND DENIAL

The Amended Complaint alleges specific ADA interactive-process facts. On June 25, 2026, Plaintiff sent a formal written request to engage in the interactive process, identifying his diagnosed disabilities, offering medical documentation, and proposing concrete accommodations: a functional radio; clear written performance expectations in place of the subjective "visibility" standard; temporary flexibility with break timing during acute symptom flares; and a hold on further discipline pending completion of the process. The response of Mindy Zumdome did not address the isolation directives, the radio, or the two-day write-up. When Plaintiff requested a support person, Zumdome conditioned attendance on a form that stripped the support person of any meaningful function; only after written protest did Zumdome issue a clarification on the morning of the meeting. The complaint cites *Beck v. Univ. of Wis. Bd. of Regents, 75 F.3d 1130, 1135–37 (7th Cir. 1996)*. The College correctly states the basic elements of a failure-to-accommodate claim: a qualified individual with a disability, the defendant's awareness, and failure to provide a reasonable accommodation. *Yochim v. Carson, 935 F.3d 586, 590 (7th Cir. 2019); Scheidler v. Indiana, 914 F.3d 535, 541 (7th Cir. 2019)*. Employment claims under *Section 504* use the applicable ADA standards. *29 U.S.C. § 794(d); McCray v. Wilkie, 966 F.3d 616, 621 (7th Cir. 2020)*.

Section 504 is not exclusively an employment statute. Its general prohibition concerns discrimination against an otherwise qualified individual with a disability in a covered federally

funded program or activity. *29 U.S.C. § 794(a)*. The Court should first identify whether Count VII concerns employment accommodation, participation in a covered program, or both. Plaintiff must allege an impairment and facts explaining the relevant substantial limitation, not simply invoke disability as a label. The motion states that a support person "was allowed." That assertion answers the claim only if the accommodation actually provided addressed the disability-related limitation at issue. Attendance by a support person and permission to provide the particular assistance requested are not necessarily identical.

If amendment is required, Plaintiff requests permission to identify the impairment and the major life activity substantially limited; his qualifications for the relevant employment or program; the College's receipt of federal financial assistance; when and how the College learned of the disability-related limitation; the specific accommodation requested and why it was needed; what the College provided or denied; and the resulting exclusion, disadvantage, or other cognizable injury. Any requested remedies must also conform to governing law. Emotional-distress damages are unavailable under the Rehabilitation Act, and punitive damages are unavailable under *Section 504*. *Cummings v. Premier Rehab Keller, P.L.L.C., 596 U.S. 212, 230 (2022); Barnes v. Gorman, 536 U.S. 181, 189 (2002)*. A limitation on particular damages does not itself eliminate an otherwise adequately pleaded claim for available relief.

## **<u>X. COUNT VIII REQUIRES SEPARATE TREATMENT OF INTERFERENCE, RETALIATION, AND CONSTRUCTIVE DISCHARGE</u>**

The College correctly identifies the ordinary interference elements from *Burnett v. LFW Inc., 472 F.3d 471, 477 (7th Cir. 2006)*. The Amended Complaint alleges specific facts the motion treats as absent. On June 2, 2026, Plaintiff formally requested FMLA leave in writing to

Human Resources Generalist Claudia Hernandez, identifying his documented PTSD, generalized anxiety disorder, and major depressive disorder. On June 3, 2026, the College confirmed eligibility in writing. Plaintiff returned to work on Monday, June 22, 2026. On June 24, 2026—exactly two days after return—supervisor Brandie Hurlburt issued a performance write-up containing extremely vague allegations concerning "visibility," break compliance, and assisting in other areas, and expressly threatening further discipline "up to and including termination." The complaint alleges that the underlying complaint dated to before the leave and was held in reserve. A two-day interval between protected activity and adverse action is among the strongest temporal-proximity evidence of causation. *King v. Preferred Tech. Grp., 166 F.3d 887, 893 (7th Cir. 1999); Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001).* It agrees, for this motion, that Plaintiff took FMLA leave. But the conclusion that leave was taken does not necessarily establish that all FMLA rights were honored. The statute prohibits an employer from interfering with, restraining, or denying the exercise of protected rights. *29 U.S.C. § 2615(a)(1).* The implementing regulation explains that interfering with an employee's rights includes not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. 29 *C.F.R. § 825.220(b)*. An employee therefore need not allege a completed denial of leave in every interference case. Discouragement or restraint may qualify, but the employee must establish resulting prejudice. *Ziccarelli v. Dart, 35 F.4th 1079, 1084–86 (7th Cir. 2022)*.

At the pleading stage, Plaintiff need not establish a full prima facie case. An employment-discrimination complaint need not plead a prima facie case. *Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510–12 (2002)*. The complaint still must plausibly identify protected activity, a materially adverse response, and a causal connection. *Fuller v. McDonough, 84 F.4th 686, 690 (7th Cir. 2023)*. The retaliation inquiry asks whether the challenged conduct would dissuade a

reasonable worker from exercising protected rights, not solely whether the employer reduced compensation or formally changed job status. *Freelain v. Village of Oak Park, 888 F.3d 895, 901 (7th Cir. 2018)*; *Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 68 (2006)*. This does not mean that a write-up automatically suffices. The question is what the particular warning said and did, its context, any accompanying consequences, and whether it plausibly operated as a materially adverse response to protected leave. If more specificity is needed, Plaintiff requests leave to identify the leave dates, the relevant decisionmakers' knowledge, the challenged discipline, its stated basis and consequences, and facts supporting the causal connection. Constructive discharge requires objectively intolerable working conditions. *EEOC v. Sears, Roebuck & Co., 233 F.3d 432, 440 (7th Cir. 2000); Patton v. Indianapolis Public School Board, 276 F.3d 334, 339 (7th Cir. 2002)*. Failure to plead constructive discharge does not necessarily defeat an independently sufficient retaliation claim based on another materially adverse action.

## XI. COUNT IX'S STATUTORY WHISTLEBLOWER CLAIM DOES NOT REQUIRE CONSTRUCTIVE DISCHARGE

The motion describes the Illinois Whistleblower Act's protection for qualifying disclosures, then offers only this reason for dismissal: Plaintiff has not alleged facts establishing constructive discharge. That assertion is incorrect. The Amended Complaint alleges with specificity that on July 22, 2026, Plaintiff resigned his employment effective immediately, by written notice to Mindy Zumdome, Vice President Kirk Anderson, Claudia Hernandez, and Brandie Hurlburt, expressly stating that the resignation was a constructive discharge compelled by the College's conduct. The cumulative conditions pleaded include retaliatory discipline,

orchestrated isolation, withheld equipment, hazardous chemical exposure, various break interferences, unanswered safety complaints, pre-judged accommodations, and continuing intrusions into his home. The complaint cites *Pennsylvania State Police v. Suders, 542 U.S. 129, 141 (2004)*. In late June 2026, several coworkers informed Plaintiff that he had been directed not to speak with Plaintiff; on June 30, 2026, the isolation expanded to specific library staff (Mikayla Kitchen, Stefanie R. Bluemle, and Andrea Wanek). That reasoning does not address the statutory claim's actual scope. The Act prohibits specified retaliation for protected disclosures and provides a civil enforcement mechanism. *740 ILCS 174/15, /20.1, /30*. An actual or constructive discharge is not a universal prerequisite to statutory relief. The Court must examine whether Plaintiff alleges a disclosure protected by the applicable statutory provision, a reasonable basis for the reported legal violation or danger, the College's knowledge, conduct meeting the statute's retaliation standard, and the required causal connection.

The College may contest whether the reported conduct falls within the Act, whether a particular response was sufficiently adverse, or whether the necessary employment nexus exists. But the absence of constructive discharge alone does not resolve those questions. The statutory theory must also be separated from common-law retaliatory discharge. Illinois does not generally permit a plaintiff to substitute constructive discharge for the actual discharge required by that common-law tort. *Hartlein v. Illinois Power Co., 151 Ill. 2d 142, 161 (1992)*. The Court should reject the motion's constructive-discharge argument as a complete answer to the statutory count. If the complaint conflates the statutory and common-law theories, Plaintiff requests leave to separate them and identify the disclosures and retaliatory acts supporting each legally viable theory.

## **XII. COUNT X SHOULD NOT BE USED TO JUSTIFY DISMISSAL WITH PREJUDICE OF UNRELATED CLAIMS**

The College relies on The Amended Complaint alleges that on June 30, 2026, at approximately 10:30 a.m., Plaintiff encountered uncured Bondo (a styrene-based polyester resin) left in a public restroom without PPE or adequate ventilation. He refused to clean or work in proximity to it. That refusal is protected under *29 C.F.R. § 1977.12(b)(2)*. On July 2, 2026, he served a formal written safety complaint. On July 8, 2026, he filed a signed OSHA complaint and Section 11(c) notice. On the same morning, at 8:10 a.m., Robert Lanzarotti personally interrupted Plaintiff's scheduled protected rest break and ordered him to resume work immediately. This occurred on the same morning as the Bondo exposure, eight days after FMLA return, and six days after the retaliatory write-up. The complaint pleads Count X in the alternative and offers the break interruption as evidence of animus supporting Counts II, VII, VIII, and IX. *Kostecki v. Dominick's Finer Foods of Illinois, Inc., 361 Ill. App. 3d 362, 373–74 (1st Dist. 2005)*, for the absence of a private cause of action under the One-Day Rest in Seven Act, and on the Director of Labor's enforcement responsibility under *820 ILCS 140/6*. Plaintiff does not contend that assigning enforcement authority to an agency automatically creates a private judicial remedy. If the governing law provides no private cause of action for the violation alleged, Plaintiff does not oppose dismissal of Count X as an independent claim. Such dismissal should not adjudicate whether the alleged incident occurred, eliminate relevant factual allegations supporting a different viable claim, or foreclose an available administrative remedy.

## **XIII. COUNT XI SHOULD BE TREATED AS A NOTICE OF UNEXHAUSTED CLAIMS, NOT A MERITS ADJUDICATION**

The motion states that Count XI requests no relief and acknowledges unexhausted ADA and Illinois Human Rights Act claims. Plaintiff does not request adjudication of claims that are not presently ripe for judicial consideration. If Count XI merely gives notice of potential claims and reserves a request to amend after completion of applicable prerequisites, the appropriate response is to remove it as a presently asserted count or dismiss it without prejudice. A placeholder does not itself toll a deadline, satisfy exhaustion, or guarantee later amendment. For ADA employment claims, the statute incorporates the relevant Title VII enforcement procedures. *42 U.S.C. § 12117(a)*. Title VII's charge-filing requirement is a mandatory claim-processing requirement, not a jurisdictional limitation. *Fort Bend County v. Davis, 587 U.S. 541, 548–51 (2019)*. Illinois claims must independently satisfy the procedures applicable under the Illinois Human Rights Act. *775 ILCS 5/7A-102, /8-111*. Plaintiff does not contend that these requirements can be bypassed. He asks only that dismissal of presently unexhausted claims not be converted into an adjudication that the underlying discrimination claims lack substantive merit.

## <u>XIV. THE MOTION DOES NOT ESTABLISH THAT AMENDMENT WOULD BE FUTILE</u>

The College requests dismissal of every claim with prejudice. That request exceeds what its arguments establish. Several arguments concern omitted particulars, mistaken statutory references, conflated theories, or procedural prerequisites rather than an incurable legal defect. The governing rule provides that the court should freely give leave when justice so requires. Fed. R. Civ. P. 15(a)(2). Leave may be denied for reasons including undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, or futility. Foman v. Davis, 371 U.S. 178, 182

(1962). The Seventh Circuit ordinarily favors an opportunity to amend following dismissal for failure to state a claim unless amendment would be futile or otherwise unwarranted. Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Northwest Indiana, 786 F.3d 510, 519–20 (7th Cir. 2015).

An earlier amendment does not, by itself, demonstrate that Plaintiff cannot cure deficiencies identified in the present motion. Plaintiff requests 28 days after the Court's ruling to file a further amended complaint addressing the particular deficiencies the Court identifies, subject to the Court's directions. That amendment would, where supported: separate each statutory theory and identify its elements; identify protected conduct, decisionmaker knowledge, adverse acts, and dates; distinguish employment claims from housing and program-participation claims; correct unsupported statutory references; specify the nature and duration of alleged exclusions from possession; identify any disability-related limitations and requested accommodations; distinguish FMLA interference from retaliation; separate statutory whistleblower protection from common-law discharge; remove claims lacking a private remedy; and limit requested relief to remedies legally available under each surviving claim.

## XV. ANY STAY MUST BE JUSTIFIED UNDER THE APPLICABLE DOCTRINE AND LIMITED TO ITS DEMONSTRATED PURPOSE

### A. Inherent Authority Does Not Establish That the Requested Stay Is Necessary or Proper

The College's invocation of inherent docket-management authority identifies a source of judicial power, not a sufficient reason to suspend this action. The Court must assess the requested stay's purpose, scope, anticipated duration, and consequences, including the prejudice

caused by postponing adjudication of claims that the state appeal may not resolve. The burden belongs to the College:

> *"The proponent of a stay bears the burden of establishing its need."*

*Clinton v. Jones, 520 U.S. 681, 708 (1997).*

The governing inquiry requires an actual balance of competing interests. In recognizing inherent authority to stay proceedings, the Supreme Court explained that its exercise "must weigh competing interests and maintain an even balance." Landis v. North American Co., 299 U.S. 248, 254–55 (1936). Where delay presents even a fair possibility of harm, the stay applicant faces an additional burden:

> *"[T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else."*

*Landis v. North American Co., 299 U.S. 248, 255 (1936).*

The College therefore must identify more than factual overlap or the possibility that appellate developments could affect this action. It should explain:

- Why proceeding with those matters now would impose a concrete hardship or materially waste litigation resources.
- Which claims or issues the state appeal is expected to resolve
- Why a narrower postponement would not adequately address that concern.
- What event would terminate the stay and when that event can reasonably be expected.
- How the proposed suspension would affect Plaintiff's ability to obtain relief and preserve relevant evidence.

Courts in this District assess whether a stay will simplify the issues, reduce litigation burdens, and unduly prejudice or tactically disadvantage the opposing party. Those considerations require application to the particular case, not merely recitation of judicial economy. *See Solis v. GSF USA, Inc., No. 22-cv-01096, Order Granting Motion to Stay, ECF No. 15 (N.D. Ill. May 17, 2022).*

**B. The Court Should Identify Whether the Requested Relief Is Docket Management or Colorado River Deference**

The appropriate framework depends on what the College asks the Court to postpone and why. If the College seeks temporary coordination pending resolution of a discrete issue, inherent docket-management authority may apply. If it instead asks the Court to suspend adjudication of substantially the entire controversy in favor of parallel state litigation, the request implicates the more demanding standards governing Colorado River deference. *Colorado River Water Conservation District v. United States, 424 U.S. 800, 817–19 (1976).*

Federal courts have a:

*"virtually unflagging obligation" to exercise the jurisdiction given them."*

*Colorado River Water Conservation District v. United States, 424 U.S. 800, 817 (1976*).

Under the Seventh Circuit's framework, the Court first determines whether the state and federal proceedings are parallel. Only if they are parallel does it assess whether exceptional circumstances justify abstention. Formal identity is unnecessary, but the inquiry requires substantially the same parties litigating substantially the same issues and a substantial likelihood that the state proceeding will dispose of all claims presented in the federal action. *Huon v.*

*Johnson & Bell, Ltd., 657 F.3d 641, 646–47 (7th Cir. 2011); Baek v. Clausen, 886 F.3d 652, 663–65 (7th Cir. 2018).*

Accordingly, the College must connect the state proceeding to the actual claims before this Court. A shared factual background does not, by itself, establish that the state appeal will resolve the federal action. The Court must examine what is pending in the state proceeding and what that proceeding can actually decide. *See Simons v. Ditto Trade, Inc., No. 14 C 309, Memorandum Opinion and Order, ECF No. 51 (N.D. Ill. Nov. 19, 2014)* (denying Colorado River abstention where the state proceeding was not substantially likely to dispose of the federal claims).

This distinction does not eliminate inherent authority whenever Colorado River abstention is unavailable. It does, however, require the Court to identify the justification for the particular relief requested. A limited stay intended to narrow an issue is materially different from wholesale deference premised on the expectation that the state proceeding will resolve the controversy. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 28 (1983).*

### C. Freed Permits a Fact-Specific Stay, Not an Automatic Stay Whenever a State Appeal Is Pending

The College's reliance on Freed v. Friedman, 215 F. Supp. 3d 642 (N.D. Ill. 2016) does not establish a categorical rule requiring suspension of every federal action that overlaps with state litigation. That decision addressed two distinct grounds: Colorado River abstention pending the state proceedings, and an alternative, more limited exercise of inherent authority pending a state-court ruling on the enforceability of a purported settlement.

The alternative holding rested on an identified practical consequence. If the settlement were enforceable, the plaintiff might already have released the defendant from liability, making further litigation of the affected claims fruitless. The court therefore identified both the particular issue awaiting resolution and the concrete hardship associated with proceeding before that ruling. *Freed v. Friedman, 215 F. Supp. 3d 642 (N.D. Ill. 2016).*

The College must make a comparably specific showing here. It must identify how the state appeal bears on each claim it seeks to suspend and why awaiting that appeal would materially simplify or eliminate the work otherwise required.

Plaintiff also recognizes that a pending state appeal can support a stay in an appropriate case. The Seventh Circuit has approved that approach where the proceedings were sufficiently related and the applicable abstention analysis supported postponement. *See Rogers v. Desiderio, 58 F.3d 299, 302 (7th Cir. 1995); Hearne v. Board of Education of Chicago, 185 F.3d 770, 778 (7th Cir. 1999); Baek v. Clausen, 886 F.3d 652, 663–65 (7th Cir. 2018).* Those authorities make the particular relationship between the proceedings important; they do not dispense with that inquiry.

**D. A Prediction of Preclusion Must Distinguish Claims From Issues**

The motion's prediction that affirmance will be "dispositive" requires analysis, not assumption. Federal courts must give an Illinois judgment the preclusive effect Illinois courts would give it. *28 U.S.C. § 1738; Sapp v. Foxx, No. 23-2502 (7th Cir.).* That obligation does not make claim preclusion, issue preclusion, and a present request for a stay interchangeable.

Claim preclusion requires:

- A final judgment on the merits rendered by a court of competent jurisdiction.

- Identity of causes of action.
- Identity of parties or their privies.

*River Park, Inc. v. City of Highland Park, 184 Ill. 2d 290, 302 (1998).*

Illinois applies a transactional test. Different legal theories or requests for relief may constitute the same cause of action when they arise from a single group of operative facts. Plaintiff therefore does not contend that labeling a claim "federal," seeking different relief, or invoking a different statute necessarily avoids preclusion. *See River Park, Inc. v. City of Highland Park, 184 Ill. 2d 290, 311–13 (1998); Huon v. Johnson & Bell, Ltd., 757 F.3d 556, 558–60 (7th Cir. 2014).*

Nevertheless, the College must establish the relevant transactional relationship, the parties' identity or privity, and the finality and scope of the judgment on which it relies. The statement that affirmance will be dispositive does not itself establish those requirements.

Issue preclusion is narrower. It concerns an identical issue actually decided in the prior proceeding, where the determination was necessary to the judgment, the judgment has the required finality, and the party against whom estoppel is asserted was a party or in privity with a party to that proceeding. *American Family Mutual Insurance Co. v. Savickas, 193 Ill. 2d 378, 387 (2000); Sapp v. Foxx, No. 23-2502 (7th Cir.).* The College must therefore identify the precise issue decided below and explain why that determination would control a particular issue here. Affirmance does not necessarily establish every allegation, factual proposition, or legal theory advanced in the state litigation.

Finality must likewise be addressed under the doctrine invoked. For issue preclusion, the Illinois Supreme Court has stated:

> *"For purposes of applying the doctrine of collateral estoppel, finality requires that the potential for appellate review must have been exhausted."*

*Ballweg v. City of Springfield, 114 Ill. 2d 107, 113 (1986).*

The pending appeal may justify postponing a particular preclusion determination, but it does not independently establish that every claim should be stayed. The College must explain how the anticipated appellate disposition affects the asserted preclusion defense and, in turn, the necessity and scope of postponement.

**E. Neither Affirmance Nor Reversal Supplies a Universal Answer to the Federal Claims**

Affirmance may support a preclusion defense if the applicable requirements are established. Reversal may remove or alter the basis for that defense, reinstate state claims, or return particular issues to the trial court. The consequences depend on the appellate court's actual disposition and the scope of the proceedings that remain.

Reversal does not automatically establish the substantive merits of Plaintiff's federal claims. Nor does it, standing alone, require every federal claim to be adjudicated in state court. Conversely, Plaintiff's preference for a federal forum does not create an exception to Illinois preclusion law or authorize otherwise impermissible claim splitting. *Svendsen v. Pritzker, No. 23-1421 (7th Cir. Jan. 29, 2024).*

The appropriate question now is whether the College has established a sufficient connection between the pending appeal and the claims it seeks to suspend. The possibility that a future disposition could affect some portion of this action warrants examination of that portion, not an unexplained assumption that the entire case must await all further state proceedings.

### F. Any Stay Should Be Framed With Defined Limits and Prompt Review

If the Court finds postponement warranted, Plaintiff requests relief tailored to the demonstrated need:

- Identified scope. The order should identify the claims, issues, and litigation activities stayed, together with the reason each is affected by the state appeal.

- Consideration of partial relief. The Court should permit unrelated claims and litigation activities to proceed unless the College establishes why they cannot reasonably be separated from the stayed matters.

- A defined endpoint. The stay should be tied to an identified appellate event, rather than an undefined period encompassing all possible remands, rehearings, or further appeals.

- Periodic reporting. The parties should file status reports at intervals fixed by the Court and promptly report any material change in the state proceedings.

- Prompt reassessment. Following the identified appellate event, the College should explain whether any further stay remains necessary and provide the appellate disposition supporting that request.

- Evidence preservation. The order should confirm that preservation obligations remain in effect and permit a party to seek narrowly tailored relief if delay threatens the availability of relevant evidence.

- No premature merits determination. The order should distinguish postponement from adjudication of the merits or final resolution of a preclusion defense.

These limitations follow the Supreme Court's direction that a stay be moderate when entered, not merely capable of later correction:

> *"The stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description."*

*Landis v. North American Co., 299 U.S. 248, 257 (1936).*

The Supreme Court also rejected the proposition that an otherwise excessive stay becomes proper simply because the opposing party may later move to vacate it. If an additional stay becomes necessary at a later stage, the applicant must then demonstrate that need. *Landis v. North American Co., 299 U.S. 248, 256–57 (1936)*. Accordingly, Plaintiff requests denial of a blanket stay absent the required showing. Alternatively, Plaintiff requests a reasoned, limited order that identifies the affected matters, considers whether unrelated matters may proceed, establishes reporting and review requirements, and preserves the opportunity to contest any later claim of preclusion.

## XVI. CONCLUSION

The motion asks the Court to treat a severed damages action as if the possession judgment resolved the motive and pretext questions that were never tried, and to do so at the pleading stage on a selective record. It asks the Court to accept that successive yearly renewals of the lease, followed by a non- renewal approximately ten days after a police report of an aggravated battery, are ordinary lease administration rather than circumstantial evidence of pretext. It asks the Court to collapse distinct statutory and common-law claims into two

buckets—ordinary lease expiration and voluntary resignation—despite the fact that Defendant controlled the housing, the employment, and the institutional process. Those requests should be rejected. The well-pleaded facts must be accepted as true. Disputed questions of motive and credibility are not resolved on a motion to dismiss. Plaintiff respectfully requests that the Court deny dismissal of claims adequately pleaded under the governing standards; decline to resolve disputed facts or motive from selected state-court testimony on this motion; deny a stay of the entire action, or alternatively limit any stay to specifically identified overlapping claims or issues; grant leave to amend within 28 days as to curable pleading deficiencies; dismiss presently unexhausted claims without prejudice, rather than adjudicating their merits; and limit any dismissal with prejudice to claims for which the Court determines that amendment would be futile.

Respectfully submitted,

**/s/ Elijah Hergert**

Elijah L. Hergert
Plaintiff, pro se
1110 35th Street
Rock Island, IL 61201

**CERTIFICATE OF SERVICE**

I certify that on the date of filing I served this Response on counsel for Defendant by electronic means through email to the addresses of record for Jason J. O'Rourke and Jenny L. Juehring of Lane & Waterman LLP.